UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL SHOPMEN PENSION FUND,
*et al.*,

   Plaintiff,

      v.

STAMFORD IRON AND STEEL WORKS,
INC.,

   Defendant.

Civil Action No. 13-1057 (CKK)

MEMORANDUM OPINION
(November 25, 2013)

The Plaintiffs, National Shopmen Pension Fund ("the Fund"), filed this action on July 10, 2013, against the Defendant Stamford Iron and Steel Works, Inc. ("SISW") to collect withdrawal liability assessed against SISW pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1001 *et seq.* The Fund claims that SISW ceased making contributions to the Fund as required under a collective bargaining agreement with Local Union 832 of the International Association of Bridge, Structural and Ornamental and Reinforcing Iron Works Union, AFL-CIO. *See* Sec. Am. Compl., at ¶¶ 7-8. On September 23, 2013, SISW filed a [17] Motion to Transfer Venue, or, in the alternative, to Dismiss for *Forum Non Conveniens*.[1] SISW seeks to transfer the case to the District of Connecticut, pursuant to 28 U.S.C. § 1404(a). The Fund filed an opposition brief, and SISW filed a reply. For the reasons explained below, the Court shall

---

[1] The Defendant initially filed a Motion to Transfer on September 6, 2013, *see* ECF No. [14]. Subsequently, the Plaintiffs were granted leave to dismiss its claims against Defendant Foxboro Consulting, Inc and file a second amended complaint. The Plaintiffs' second amended complaint was entered on the public docket on September 11, 2013, *see* ECF No. [16]. The Defendant re-filed its Motion to Transfer on September 23, 2013, to conform to the second amended complaint.

DENY SISW's Motion to Transfer Venue or, in the alternative, to Dismiss for *Forum Non Conveniens*.

## I. FACTUAL BACKGROUND

The National Shopmen Pension Fund is a multiemployer employee benefit plan whose purpose is to provide pension, retirement, and related benefits to the eligible employees of employers who contribute to the Fund pursuant to various collective bargaining agreements with affiliated Shopmen's Local Unions of the International Association of Bridge, Structural, and Ornamental and Reinforcing Iron Works Union, AFL-CIO. *See* Sec. Am. Compl., at ¶ 4. SISW is a small Stamford, Connecticut-based specialty steel mill. *See id.* at ¶ 6; Decl. of Thomas Pettit ("Pettit Decl.), at ¶ 4. SISW was the signatory to a collective bargaining agreement ("CBA") with Shopmen's Local Union No. 832 of the International Association of Bridge, Structural and Ornamental and Reinforcing Iron Works Union, AFL-CIO. *See* Sec. Am. Compl., at ¶¶ 7-8; Pettit Decl., at ¶¶ 9-10. Pursuant to the CBA, SISW was required to make monthly contributions to the Fund on behalf of its unionized employees. *See* Sec. Am. Compl., at ¶ 9; Def.'s Mot., Ex. B (Collective Bargaining Agreement), at 21-22.

In June 2011, the Fund determined that SISW had effected a "complete withdrawal" from the Fund, as defined in § 4203 of ERISA, after allegedly receiving notice from Shopmen Local Union No. 832 representative, Anthony Rosaci, that SISW had allegedly ceased operations. *See* Sec. Am. Compl., at ¶ 11. The Fund determined that as a result of SISW's complete withdrawal, SISW incurred withdrawal liability to the Fund in the amount of $233,420. *See id*.

The Defendant alleges that the Fund was erroneously notified by Mr. Rosaci that SISW had ceased operations in December 2011. Def.'s Mot., at 2. The Defendant claims that, in December 2011 SISW underwent a substantial corporate reorganization, including a sale of its

main building, which permitted upgrades to its manufacturing facility. *Id.* During renovations, SISW laid off its workforce and explained to their employees that some of them would be recalled when the construction was complete, which three employees were. *Id.* The Defendant alleges that contrary to the information Mr. Rosaci provided the Fund, SISW remained open throughout December 2011 and was required to only temporarily suspend certain operations during January 2012 while leasehold improvements were made to its facility. *Id.* Thus, the Defendant argues, the Fund is erroneously claiming withdrawal liability.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interests of justice." In considering whether transfer would be proper, the court may consider the following factors:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Greater Yellowstone Coalition v. Bosworth,* 180 F. Supp. 2d 124, 127 (D.D.C. 2001). The Court may also weigh public interest considerations such as (1) the transferee court's familiarity with the governing laws and the pendency of the related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.* at 128. Section 1404(a) vests discretion in the district court to conduct an individualized, case-by-case analysis. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

"A plaintiff's choice of forum is ordinarily entitled to deference." *Nat'l Ass'n of Home Builders v. U.S. Envt'l Prot. Agency,* 675 F. Supp. 2d 173, 179 (D.D.C. 2009). ERISA contains a special venue provision explicitly authorizing plaintiffs to bring actions "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Courts give "special weight to a plaintiff's choice of forum in ERISA cases." *Flynn v. Veazey Constr. Corp.,* 310 F. Supp. 2d 186, 193 (D.D.C. 2004). This is because ERISA's special venue provision reflects Congress' intention to protect the financial integrity of such pension funds by allowing these funds to bring all collection suits in their home districts. *Veazey,* 310 F. Supp. 2d at 193. "A defendant requesting a transfer of venue in an ERISA case filed in the pension fund's home district faces an uphill battle, as the defendant must persuade the court that either the convenience of the parties or the witnesses, or the interest of justice, strongly outweigh the substantial deference given to a plaintiff's choice of forum in these cases." *Int'l Painters & Allied Trades Indus. Pension Fund v. Tri–State Interiors, Inc.,* 357 F. Supp. 2d 54, 58 (D.D.C. 2004).

The moving party bears the burden of establishing that the considerations of convenience and the interests of justice weigh in favor of a transfer to that district. *See Int'l Bhd. of Painters & Allied Trades Union v. Best Painting and Sandblasting Co., Inc.,* 621 F. Supp. 906, 907 (D.D.C. 1985).

### III.  DISCUSSION

There is no dispute between the parties that this action could have been filed in the District of Connecticut, where SISW resides and where any breach would have occurred. *See* 29 U.S.C. § 1132(e)(2) (stating that ERISA actions may be brought where the plan is administered,

4

where the breach took place, or where a defendant resides or may be found). Thus, the only question is whether SISW has met its burden of showing that the District of Connecticut is a much more convenient forum for the adjudication of this action. SISW argues that transfer is appropriate because all of the fact witnesses relevant to this case can be found in the District of Connecticut. In addition, SISW argues that it would be a substantial financial burden to the company to litigate in the District of Columbia. Finally, SISW contends that the connection to the District of Connecticut is greater because all of the operative facts regarding this case transpired in Connecticut and the CBA provides that Connecticut law shall apply, whereas the only connection between this case and the District of Columbia is the fact that the Fund's administrative offices are located here. The Court shall review SISW's contentions below.

### A. *Convenience of Witnesses and Evidence*

SISW claims that all of the fact witnesses in this case reside in Connecticut. SISW further notes that some of the witnesses, especially Mr. Rosaci who notified the Fund of SISW's alleged cessation of activities, may be hostile and would be outside the subpoena power of this Court. In addition, SISW contends that all relevant documents in this case are in Connecticut.

The Fund responds that all of the Fund's fact witnesses are in the District of Columbia, as well as all of the documents and files maintained for SISW. The Fund argues that as a result it would be equally inconvenienced if the case were transferred to Connecticut. In addition, the Fund notes that much of the evidence pertinent to this case takes the form of documents, lessening any concern about witness inconvenience.

The Court notes, as it has before, *see Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70-71 (D.D.C. 2010), that the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and

transported to any appropriate forum. Moreover, the physical location of witnesses is less important when testimony may be taken by deposition (including by deposition *de bene esse*) and presented to the Court at either the summary judgment stage or a trial. Witnesses may also testify in this Court at trial via live videoconference. All of these options are available in the event that Mr. Rosaci, who SISW has identified as a potentially hostile witness, refuses to testify in the District of Columbia. Thus, it appears that transferring this action to the District of Connecticut would merely shift the balance of inconvenience from SISW to the Plaintiffs. This Court has previously held that in an ERISA case, such a shift is insufficient to warrant a transfer to the defendant's favored venue. *See Tri-State Interiors, Inc.*, 357 F. Supp. 2d at 57. Therefore, the Court is not persuaded that the convenience of the parties and witnesses militates in favor of transfer.

### B. *Financial Burden of Litigation*

SISW also argues that being forced to litigate this case in the District of Columbia would present a substantial hardship for the company because it is a "small business facing many financial obstacles." Def.'s Mot. at 5. SISW notes that it only has three employees other than its two owners and provides a financial accounting showing the company ran a deficit for the period of January through May 2013. The Fund responds that traveling to Connecticut for trial will "greatly increase the cost of litigation in this case," and inconvenience the Fund as well.

Although the Court recognizes the very real financial constraints on small businesses in this time of economic insecurity, SISW's financial concerns do not "strongly outweigh the substantial deference given to a plaintiff's choice of forum" in ERISA cases. *Tri-State*, 357 F. Supp. 2d at 56. Indeed, much of the rationale for creating a preference for litigating ERISA cases in the district where the plan is administered is based on the need to protect the financial
6

viability of pension funds. This Court's reasoning in rejecting the defendant's motion to transfer in *International Painters and Allied Trades Industry Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54 (D.D.C. 2004), applies with equal force here:

> Although Tri–State may have more limited resources than the Plaintiff–Fund, the latter is not acting as a for-profit corporation, but rather as a fiduciary, entrusted to conserve resources for its beneficiaries . . . If allegedly delinquent pension fund contributors such as Defendant were regularly granted venue transfers, pension funds such as Plaintiff–Fund would be forced to incur enormous, if not prohibitively high, expenses to collect unpaid monies—a situation Congress explicitly sought to prevent when it enacted ERISA's special venue provisions. *See Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heat & Air Cond., Inc.,* 702 F.Supp. 1253, 1256 (E.D.Va.1988) (noting that ERISA's venue provision was explicitly intended to "remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants," H.R.Rep. No. 93–533 at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655)).

*Id.* at 57-58; *see also Boland v. Fortis Const. Co., LLC*, 796 F. Supp. 2d 80, 92 (D.D.C. 2011) ("Although the Court recognizes the significant cost and expense of litigating this case half-way across the country, the Court must weigh the defendant's burden against the public policy rationales for allowing ERISA Funds their choice of forum."). While SISW may experience financial hardship from litigating this case in the District of Columbia, "forcing parties such as the Fund to litigate delinquency claims in multiple districts would cause an unnecessary dissipation of the pension funds' resources and may encourage fund contributors to default on their obligations more frequently, with the knowledge that the funds may be financially unable to enforce their legal rights in foreign districts." *Tri-State Interiors*, 357 F. Supp. 2d at 58 (citing *Veazey*, 310 F. Supp. 2d at 193). Consequently, as transferring this case to the District of Connecticut will only substitute one party's financial hardship for another's, such a shift is insufficient to warrant a transfer to the defendant's favored venue. *Id.* at 57.[2]

---

[2] SISW argues that the facts in this case are most similar to the facts in *Central States, Southeast*

## C. Connection to the District of Columbia

Finally, SISW argues that this case should be transferred to the District of Connecticut because SISW has no connection to the District of Columbia and all of the conduct in this case occurred in Stamford, Connecticut. SISW further contends that a transfer to Connecticut would be appropriate because the CBA provides that Connecticut law shall apply to it.

The Fund responds that it is a frequent litigant before the District Court of the District of Columbia and has a strong interest in establishing a pattern of consistent rulings to govern disputes, rather than facing a patchwork of rulings from various districts in which employers are located. As for the law governing the case, the Fund responds that only the CBA's Savings Clause states that each provision of the contract is assumed to comply with federal and Connecticut laws, however, that is not a choice-of-law provision requiring the CBA to be

---

*& Southwest Areas Pension Fund v. John R. Concrete & Supply Co.*, 2008 WL 4066399 (N.D. Ill. Aug. 27, 2008) and *Retirement Plan of Unite Here Nat'l Retirement Fund v. Village Resorts, Inc.*, 2009 WL 255860 (S.D.N.Y. Feb. 3, 2009), in which the defendants' motions to transfer were granted. Specifically, SISW argues that the Court should rely upon these cases because both involved an economically fragile employer. The Court disagrees. In *Central States*, the Fund did not dispute the fact that a substantial number of witnesses were located outside of the Fund's preferred jurisdiction and the jurisdiction's subpoena power. Nor did the Fund rebut the defendants' argument that the "relative differences in resources among the parties," meant the defendants would suffer substantial financial hardship if forced to litigate in the Fund's preferred jurisdiction. *Central States*, 2008 WL 4066399, *4. In the present case, one party will be inconvenienced no matter the Court's decision as there are witnesses located in both the District of Columbia and Connecticut and the Fund has also alleged financial inconvenience if forced to litigate in Connecticut. Likewise, *Village Resorts* is distinguishable from the present case because it too involved a situation where all documents and witnesses were outside the jurisdiction—New York—in which the Fund was administered and where the Fund originally filed suit. More importantly, when the defendant entered into the pension plan agreement, the Fund was administered in Illinois, not New York. It was only at the time the suit was filed that the Fund was "partially" administered in New York. The court in *Village Resorts* stated that "had the plan been administered in New York when the Defendant entered into the pension plan agreement, *the defendant would be hard-pressed to now argue that New York is an inconvenient forum*." *Village Resorts*, 2009 WL 255860, *5. Finally, both of these cases are unreported opinions from outside the D.C. Circuit. This jurisdiction has regularly found that the public policy rationales for allowing ERISA Funds their choice of forum outweigh economic hardship on the part of the defendant. *See, e.g., Boland*, 796 F. Supp. 2d at 92 (denying a motion to transfer away from the jurisdiction in which the Fund was administered even though "defendant states that it is a 'small, upstart company that is attempting to begin its business in what is one of, if not the worst, construction economies in the past 25 years,' and that 'defense of this lawsuit is a major, unforeseen expense.'")

interpreted under Connecticut law. The Fund further argues that, in any event, choice-of-law provisions do not affect the venue analysis under 28 U.S.C. § 1404(a).

In light of the deference given by courts to an ERISA plaintiff's right to bring an action where the plan is administered, the Court finds, contrary to SISW's contention, that the District of Columbia also has a significant connection to this action. *See Fanning*, 711 F. Supp. 2d at 72. "[T]he interest of justice suggests that this matter remain in the District of Columbia because subjecting pension funds to uniform interpretation of the complex ERISA laws is vital to the efficient administration of such funds." *Tri-State Interiors,* 357 F. Supp. 2d at 58. Finally, the Court agrees with the Fund that the language included in the Savings Clause should not change the Court's analysis. A Savings Clause, such as the one included in the CBA, is not a choice-of-law provision setting forth under which state law the contract shall be interpreted. Instead, it is a contractual provision meant to ensure that the contract remains enforceable even if part of the contract is later held to be invalid. The Savings Clause language referencing the laws of the state of Connecticut on which SISW relies simply affirms that all provisions of the contract are legal. It does not state that the contract is to be interpreted under Connecticut law and thus does not impact the Court's analysis of the most appropriate venue in this matter.

### D. Dismissing on the basis of *Forum Non Conveniens* in the alternative

In the alternative, SISW asks this Court to dismiss the Plaintiffs' Complaint against SISW for improper venue, on the grounds of *forum non conveniens*. For the same reasons the Court rejects transferring the case to the District of Connecticut, the Court rejects SISW's alternative argument. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 (1981) ("dismissal [on ground of *forum non conveniens*] will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is

unable to offer any specific reasons of convenience supporting his choice.").

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the convenience of the parties and witnesses does not weigh in favor of a transfer to the United States District Court for the District of Connecticut, and that such a transfer is not in the interest of justice. Accordingly, the Court shall DENY Defendant's [17] Motion to Transfer Venue or, in the alternative, Dismiss for *Forum Non Conveniens*.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE